48 F.3d 1229
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Lee DOMINGUEZ, Defendant-Appellant.
 No. 94-10078.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 12, 1994.
Decided Feb. 27, 1995.
 
 IN PART, REVERSED IN PART.
 Before: HUG, CANBY and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Michael Lee Dominguez appeals his conviction and sentence for criminal contempt in violation of 18 U.S.C. Sec. 401(3). We affirm in part, reverse in part, and remand for resentencing.
 
 I. DISMISSAL OF THE INDICTMENT
 
 3
 "We are divided as to whether the denial of a motion to dismiss an indictment is reviewed de novo or for an abuse of discretion." United States v. Woodley, 9 F.3d 774, 777 (9th Cir.1993). But under either standard, it is clear that the district court did not err by declining to dismiss Dominguez's indictment.
 
 The indictment charges that Dominguez:
 
 4
 did knowingly and willfully, refuse to be sworn and to answer material questions put to him when called as a witness during [Laurence Ettinger's trial], as he was then and there required to do so by the Honorable Howard D. McKibben ... by Judge McKibben's Oral Orders ... compelling [Dominguez] to be sworn as a witness and to testify....
 
 
 5
 Dominguez maintains that Judge McKibben relied "on the order of Judge George allegedly signed and filed in the Homick trial." This argument is without merit.
 
 
 6
 We begin by noting that the record does not support Dominguez's theory that Judge McKibben ordered him to testify only because he believed that Judge George had already signed the Order to Compel Testimony. Before Dominguez was called to testify in Ettinger's trial, the government's attorney, Mr. Lambrose, advised Judge McKibben that "I do not believe that Judge George in fact signed [the order]."
 
 
 7
 But even if Judge McKibben did mistakenly believe that Judge George had signed the Order to Compel Testimony, it would not matter. To be guilty of contempt, one need only intentionally and willfully violate a court's orders. 18 U.S.C. Sec. 401(3); Yagman v. Republic Ins., 987 F.2d 622, 629 (9th Cir.1993) ("The criminal contempt power enables judges to fine or imprison persons who willfully violate court orders.") (citation omitted). Judge McKibben ordered Dominguez to be sworn. He refused. This act, by itself, is sufficient to uphold the contempt indictment.
 
 
 8
 We also note that Dominguez's suggestion that he believed that he did not have immunity is of no avail. In the first place, even if Dominguez had not been granted immunity, he was not entitled to refuse to be sworn. See United States v. Moore, 682 F.2d 853, 857 (9th Cir.1982) (the right against self-incrimination does not justify a "blanket refusal to answer any question") (quoting United States v. Pierce, 561 F.2d 735, 741 (9th Cir.1977), cert. denied, 435 U.S. 923 (1978)). In addition, once Judge McKibben informed Dominguez of the government's motion to compel testimony pursuant to 18 U.S.C. Sec. 6003, he was obligated to testify and nothing he said could be used against him. See 29 U.S.C. Sec. 6002 ("a witness may not refuse to comply with the order [to testify] on the basis of the privilege against self-incrimination," when "the person presiding over the proceeding communicates to the witness an order issued under this part") (emphasis added).
 
 II. THE MOTION FOR NEW TRIAL
 
 9
 For similar reasons, the district court did not err in denying Dominguez's motion for a new trial based on newly discovered evidence. New evidence warrants a new trial if:
 
 
 10
 (1) the evidence is newly discovered and was unknown ... at the time of the trial, (2) the evidence is material, not merely cumulative or impeaching, (3) the evidence will probably produce an acquittal, and (4) failure to learn of the evidence sooner was not due to a lack of diligence.
 
 
 11
 United States v. Davis, 960 F.2d 820, 825 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 210 (1992) (quoting United States v. Walgren, 885 F.2d 1417, 1428 (9th Cir.1989)). We review the district court's denial of a motion for a new trial for an abuse of discretion. United States v. Young, 17 F.3d 1201, 1203 (9th Cir.1994).
 
 
 12
 Dominguez argues that the dismissal of the indictment for his alleged contempt in the Homick trial constitutes new evidence that warrants a new trial. But what occurred before Judge George in the Homick trial is simply irrelevant to whether Dominguez willfully disobeyed Judge McKibben's orders.[1] The district court therefore did not err because the "new evidence" is not material and would not likely produce an acquittal.
 
 III. THE UPWARD DEPARTURES TO THE SENTENCE
 
 13
 The Contempt Guideline instructs the court to apply the Other Offense category to contempt crimes. U.S.S.G. Sec. 2J1.1. The Other Offense Guideline indicates that the court should apply "the most analogous offense guideline." U.S.S.G. Sec. 2X5.1. Following the suggestion in the Application Note to the Contempt Guideline, the district court applied, by analogy, the Obstruction of Justice Guideline. See U.S.S.G. Sec. 2J1.1, comment. (n. 2).
 
 
 14
 The Obstruction of Justice Guideline required the court to apply the Accessory After the Fact Guideline because the offense (contempt) "involved obstructing the investigation or prosecution of a criminal offense." U.S.S.G. Sec. 2J1.2(c). The Accessory After the Fact Guideline required the court to apply the base offense level of the underlying offense to which Dominguez is analogized to be the accessory, and reduce that base offense level by 6 points. Ettinger's offense was arson, which has a base level of 24. The district court thus properly computed Dominguez's base offense level at 18.
 
 
 15
 After arriving at the base offense level of 18, the district court concluded that pursuant to U.S.S.G. Sec. 5K2.0, the base offense level should not be reduced 6 points as called for by the Accessory Guideline, and thereby departed upward 6 points. The district court then departed upward 2 points by drawing an analogy between recklessly endangering another while fleeing from a police officer, Sec. 2K1.4, which calls for a 2 point upward departure, and recklessly endangering others through arson. Lastly, the district departed upward 2 more points pursuant to Secs. 4A1.3 and 5K2.0 because Dominguez's criminal history category of VI inadequately represented the seriousness of his past criminal conduct and the likelihood that he will commit other crimes.
 
 
 16
 We review the district court's upward departure under a three-part test: "(1) did the district court have legal authority to depart because it identified an aggravating circumstance of a kind or to a degree the Commission did not adequately take into account; (2) were there factual findings to support the circumstances for departure; and (3) was the extent of the departure unreasonable?" United States v. Galvez-Villareal, 3 F.3d 314, 316 (9th Cir.1993) (internal quotations and citation omitted).
 
 A. The 6 Point Upward Departure
 
 17
 We conclude that the district court erred in departing upward 6 points. The district found that Dominguez "was not merely ... an accessory after the fact as suggested by [the] Guideline ... [because] [i]n your normal case a defendant who refuses to testify against someone else is not the perpetrator of the underlying offense, here the underlying arson."
 
 
 18
 The difficulty with the court's reasoning is that the obstruction of justice to which Dominguez's contempt was analogized was the obstruction of Ettinger's arson conviction, not Dominguez's own. The fact that Dominguez was a principal in the arson is not logically related to his contempt and its effect on the Ettinger trial.
 
 
 19
 The Guidelines appropriately analogized Dominguez's contempt to obstruction of justice and to accessory after the fact because the contempt--the refusal to testify--obstructs Ettinger's trial and aids, after the fact, Ettinger's crime. Dominguez's own arson is not part of that chain of causation, stemming from the refusal to testify.
 
 
 20
 Dominguez's participation in the arson can be taken into account by a conviction for that offense, and it can be reflected in his criminal history for purposes of sentencing in the contempt prosecution. In the latter sense, it is a factor that has already been taken into consideration by the Sentencing Commission for purposes of U.S.S.G. Sec. 5K2.0. But Dominguez's arson is too unrelated to the refusal to testify to be regarded as an "aggravating circumstance" of his contempt, within the meaning of Sec. 5K2.0. The upward departure was accordingly unauthorized.
 
 
 21
 B. The Two Point Departure for Reckless Endangerment
 
 
 22
 The district court's upward departure for Dominguez's reckless endangerment of others is equally problematic. Contrary to the court's reasoning, the Arson Guideline already took into account Dominguez's endangerment of others. Section 2K1.4 (Arson) provides that the offense level of 24 should apply "if the offense (A) created a substantial risk of death or serious bodily injury to any person other than a participant in the offense, and that risk was created knowingly...." The district court thus did not identify an "aggravating or mitigating circumstance ... not taken into consideration by the Sentencing Commission...." and therefore erred. U.S.S.G. 5K2.0.
 
 
 23
 C. The Two Point Departure for an Underrepresented Criminal History Category
 
 
 24
 The district court did not err in departing upward 2 points because Dominguez's criminal history was not adequately reflected in a criminal history category of VI. The district court identified a number of egregious crimes that Dominguez acknowledged committing, but which were not included in Dominguez's criminal history calculation. Dominguez's criminal history is " 'significantly more serious' than that of other defendants in the same criminal history category." United States v. Carrillo-Alvarez, 3 F.3d 316, 320 (9th Cir.1993). A district court may depart upward from Category VI when doing so is supported by the record. See United States v. Streit, 17 F.3d 306, 308 (9th Cir.1994).
 
 IV. CONCLUSION
 
 25
 Dominguez's conviction is affirmed. Because the district court erred in its six point upward departure and in one of its two point upward departures, we vacate the sentence and remand for resentencing.
 
 
 26
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR RESENTENCING.
 
 
 27
 HAWKINS, Circuit Judge, concurring.
 
 
 28
 I embrace all of the disposition, except for section III(A), a result I join because the Sentencing Guidelines require it. This is good example of how the "one size fits all" approach of the Guidelines, however well-intentioned, runs square up against the necessarily individualized process of criminal sentencing. In this case, the approach the Guidelines requires thwarts the good faith efforts of a district judge trying mightily to read common sense into that process. Dominguez was not someone who merely assisted in the commission of the arson--Judge Pro had sufficient evidence in hand to conclude that Dominguez was the torch. As such, he richly deserved all that Judge Pro wanted to give him.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The district court dismissed the Homick contempt indictment because in that case it was unclear that the judge actually ever ordered Dominguez to do anything. But here, there can be no doubt that Judge McKibben ordered Dominguez to be sworn and to testify. Dominguez disobeyed these orders. This is contempt