UNITED STATES of America, Plaintiff–Appellee,

v.

Milton BAKER, Defendant–Appellant.

No. 99–56718.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 15, 2001*

Filed April 5, 2001

As Amended May 7, 2001.

---

* Appellant's counsel was permitted to appear and argue by telephone.

Mary F. Gibbons, Toms River, New Jersey, for the defendant-appellant.

Ronald L. Cheng, Alka Sagar, Assistant United States Attorneys, Los Angeles, California, for the plaintiff-appellee.

Before: TASHIMA and FISHER, Circuit Judges, and ZILLY, District Judge.**

TASHIMA, Circuit Judge:

Milton Baker ("Baker") appeals the denial of his motion to vacate and set aside his conviction pursuant to 28 U.S.C. § 2255. He contends that his Sixth Amendment right to counsel on direct appeal was violated because he was denied the right to conflict-free representation and, alternatively, he received ineffective assistance of counsel. We have jurisdiction pursuant to 28 U.S.C. § 2253 and we affirm. Baker has neither demonstrated an actual conflict nor satisfied the requirements of *Strickland v. Washington,* 466

** The Honorable Thomas S. Zilly, United States District Judge for the Western District of Washington, sitting by designation.

U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

## I. BACKGROUND

On September 14, 1989, Baker and co-defendant Cherry Yolanda Wheatley ("Wheatley") entered a Federal Express office in Los Angeles to send a package. Detectives of the Los Angeles Police Department, who were monitoring the office, noticed their nervous and suspicious behavior while waiting in line and observed them send the package via priority overnight delivery. Based on this behavior, the detectives approached Baker and Wheatley outside the office, identified themselves as police officers, advised them that they were not under arrest, were free to leave and to not speak with them, and then asked them for identification. As the detectives were looking at the identification provided by Baker and Wheatley, one of them explained that he was interviewing people suspected of shipping narcotics via Federal Express. Baker stated, "I do not know what is in the package, I'm mailing it for a friend of mine." Baker then grabbed both licenses and fled the scene with the officers in pursuit.

Wheatley was taken into custody and a search of her purse revealed a large bundle of cash (later determined to be approximately $6,000), the pen used to address the package, and the customer receipt. A search warrant was obtained for the package, and the subsequent search and analysis of its contents revealed 5,659.4 grams of 77 percent-pure cocaine base. Baker was later arrested at his home. He stipulated at trial that he was in Mobile, Alabama, during at least part of the time he was a fugitive. The package of drugs was to be shipped to an address in Mobile.

Prior to trial, both defendants filed motions to suppress the seized cocaine. Wheatley also contended that her arrest was not supported by probable cause, that the search of her person was unjustified, and that certain statements were obtained in violation of her rights. The district court denied the motions to suppress the seized evidence. It found that Wheatley's arrest was supported by probable cause and that the search of her person was justified as incident to her arrest. However, it granted Wheatley's motion to exclude her statements. Both defendants were convicted of one count of possession of cocaine base with intent to distribute and one count of distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1). Baker was sentenced to a term of 235 months' imprisonment and five years of supervised release.

On direct appeal, Wheatley's conviction was reversed on the ground that her arrest was not supported by probable cause; therefore, the fruits of the search incident to her arrest should have been suppressed. *United States v. Wheatley*, No. 90–50171, 1992 WL 389274 (9th Cir. Dec.28, 1992) (unpublished memorandum disposition). Baker raised only one issue on direct appeal, namely that because the police did not have sufficiently articulable suspicion to make the initial investigative stop, evidence of the cocaine base should have been suppressed. We affirmed his conviction, finding that his claim was waived below and, alternatively, that the stop was, in any event, consensual. *United States v. Baker*, No. 90–50253, 1992 WL 289548 (9th Cir. Oct.15, 1992) (unpublished memorandum disposition). Baker was represented on his direct appeal by Michael Maloney ("Maloney").

While Baker's direct appeal was pending, unbeknownst to Baker, Maloney was under investigation by the United States Attorney's office for the Southern District of New York, culminating in the filing of an information on October 3, 1991. On

January 23, 1992, Maloney pled guilty to one count in violation of 18 U.S.C. § 371 (conspiracy) and one count in violation of 18 U.S.C. § 1344 (bank fraud) in connection with fraudulently obtained bank loans. At sentencing, the district court departed downward under U.S.S.G. § 5K1.1 in light of Maloney's cooperation with the government. On May 13, 1992, Maloney was sentenced to a 12-month term of imprisonment and three years of supervised release. Absent the § 5K1.1 departure, the Sentencing Guidelines would have prescribed a sentencing range of 21 to 27 months. Maloney's incarceration was ordered to commence on June 29, 1992. Baker's appeal was scheduled for oral argument on October 5, 1992; not surprisingly, Maloney waived oral argument.[1] Maloney never advised his client of the investigation and charges, his cooperation with federal authorities, or his ultimate plea and sentence in the Southern District of New York.

On April 22, 1997, Baker moved to vacate and set aside his conviction contending, *inter alia*, that he was deprived of his Sixth Amendment right to counsel on direct appeal by virtue of his attorney's conflict of interest and by the ineffective assistance of counsel. The district court denied the motion.[2]

## II. STANDARD OF REVIEW

A district court's decision to deny a federal prisoner's § 2255 motion is reviewed de novo. *United States v. Chacon–Palomares*, 208 F.3d 1157, 1158 (9th Cir.2000). We review de novo whether a defendant was denied the right to conflict-free representation, *Garcia v. Bunnell*, 33 F.3d 1193, 1195 (9th Cir.1994), or received ineffective assistance of counsel, *Jackson v. Calderon*, 211 F.3d 1148, 1154 (9th Cir.2000).

## III. ANALYSIS

### A. Conflict of Interest

The guarantees of due process entitle a criminal defendant to effective assistance of counsel on his first appeal as of right. *See Pollard v. White*, 119 F.3d 1430, 1435 (9th Cir. 1997) (citing *Evitts v. Lucey*, 469 U.S. 387, 391–405, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)). Effective assistance of counsel "includes a right to conflict-free counsel." *United States v. Mett*, 65 F.3d 1531, 1534 (9th

---

1. Maloney's motion to submit the case on the briefs, without oral argument, was granted by the panel hearing the direct appeal, pursuant to Fed. R.App. P. 34(a), and former Ninth Cir. R. 34–4.

2. The district court also denied a certificate of appealability ("COA"). Subsequently, however, this court granted a COA on the issues of appellate counsel's alleged conflict of interest and the asserted ineffective assistance of counsel on appeal. In the COA, the motions panel framed the question of counsel's alleged conflict of interest as a Sixth Amendment issue, undoubtedly because the parties addressed the question as such. The Sixth Amendment, however, does not apply to appellate proceedings. *Martinez v. Court of Appeal*, 528 U.S. 152, 160–61, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000). As discussed in Part III.A, *infra*, the right to counsel on a direct criminal appeal is a due process right. *Cf. Miller v. Keeney*, 882 F.2d 1428, 1431 n.4 (9th Cir.1989) ("While the right to the effective assistance of counsel *at trial* is guaranteed to state criminal defendants by the sixth amendment as applied to the states through the fourteenth, the sixth amendment does not address a defendant's rights on appeal; the right to effective state appellate counsel is derived purely from the fourteenth amendment's due process guarantee." (emphasis in the original) (citations omitted)). We therefore construe the issues certified for appeal and briefed by the parties as grounded in the Due Process Clause of the Fifth Amendment (Baker was a federal, not a state, criminal defendant). *See Furman v. Wood*, 190 F.3d 1002, 1005 (9th Cir.1999) (holding that COA should be liberally construed).

Cir. 1995) (construing the right to counsel under the Sixth Amendment). Baker contends that there was an irreconcilable conflict of interest between him and his attorney because Maloney was involved in his own legal maneuvering with the United States Department of Justice at the same time that he was representing Baker on appeal from a federal conviction. Not only was Maloney under investigation and ultimately convicted and incarcerated while Baker's appeal was pending, but more significantly he was also actively seeking to obtain a reduction of his own sentence by cooperating with the prosecution. Baker contends that as a result of a conflict between Maloney's personal interests and the zealous representation of his client, counsel raised only a single, groundless issue on appeal and failed to raise other potentially meritorious issues.

■■■ In order to establish a violation of the right to conflict-free representation, Baker must show "that an actual conflict of interest adversely affected his lawyer's performance." *United States v. Moore,* 159 F.3d 1154, 1157 (9th Cir.1998) (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). Thus, Baker must show (i) that counsel actively represented conflicting interests, and (ii) that the actual conflict adversely affected counsel's performance. *Mannhalt v. Reed,* 847 F.2d 576, 579 (9th Cir.1988). Moreover, Baker must demonstrate an actual conflict, not the mere possibility of conflict, "through a factual showing on the record." *Moore,* 159 F.3d at 1157 (quoting *Morris v. California,* 966 F.2d 448, 455 (9th Cir.1991)). Once an actual conflict is shown, however, Baker can establish adverse effect by demonstrating only "that some effect on counsel's handling of particular aspects of the trial was 'likely.'" *Id.* (quoting *United States v. Miskinis,* 966

F.2d 1263, 1268 (9th Cir.1992)). Unlike a challenge to counsel's competency, prejudice is presumed upon such a showing. *Mannhalt,* 847 F.2d at 580. Additionally, this presumption of prejudice extends beyond a conflict of interest between the clients of a lawyer to include "a conflict between a client and his lawyer's personal interest." *Id.*

■■■ Because we conclude that Baker has failed to demonstrate an actual conflict through a factual showing on the record, we do not reach the adverse-effect prong of the analysis. Despite Maloney's deplorably unprofessional conduct in advising neither his client nor the court of his own conviction and sentence, Baker's bare allegation suggests, at most, the mere possibility of conflict, not that counsel actively represented conflicting interests. As the Second Circuit has explained: "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *United States v. Levy,* 25 F.3d 146, 155 (2d Cir.1994) (internal quotation marks and citation omitted). Baker has not shown that, at any point during Maloney's representation, there was a basis for the interests of attorney and client to diverge with respect to any material issue or course of action-that is, that counsel actively represented conflicting interests.

Although Maloney was under investigation by-and cooperated with-the United States Attorney in the Southern District of New York, earning a downward departure for substantial assistance, Baker was prosecuted, convicted, and appealed from a conviction in the Central District of California. There is no indication in the record of any connection between any of the parties involved in the two matters, any

relation between the charges or underlying activities at issue, or any other link between Maloney's cooperation, plea, and sentence in New York and his representation of Baker in Los Angeles-or, for that matter, any suggestion that authorities in either jurisdiction were even aware of proceedings in the other. In other words, Baker points to nothing in the record to show that Maloney was ever in a position of choosing whether to help himself or his client or of pursuing anything less than a zealous appeal on behalf of his client because of any conflicting personal interest.

We find *United States v. Aiello,* 900 F.2d 528 (2d Cir.1990), persuasive in this regard. In *Aiello,* the defendant alleged that he was denied his right to conflict-free counsel because the lawyer who represented him at trial on several narcotics offenses in the Southern District of New York was himself under investigation for tax evasion in the Eastern District of New York and entered into a plea agreement just days after Aiello was sentenced. *Id.* at 530. After noting that the lawyer's purported crimes were unrelated to the offenses for which the defendant was prosecuted, the court noted that the defendant "has proffered no basis upon which to believe that [counsel's] conduct of [his] defense in one District was intended to curry favor with the prosecutors in another District." *Id.* at 532. So, too, is it in this case.

Baker's reliance on *United States v. De-Falco,* 644 F.2d 132 (3d Cir.1980), is unavailing. In *DeFalco,* the court reversed the denial of a § 2255 motion because counsel, while representing the defendant on direct appeal, was himself under indictment and entered into a plea bargain with the same federal authorities who were prosecuting his client. *Id.* at 133. Discussing the threat posed to our adversary system by such circumstances, the court

"conclude[d] that inherent emotional and psychological barriers created an impermissible potential of preventing appellate counsel from competing vigorously with the government." *Id.* at 136. But *DeFalco* was decided before the requirement of an actual, as opposed to potential, conflict was announced by the Supreme Court in *Cuyler.* In fact, the *DeFalco* court specifically noted: "We are persuaded that, *even without proof of an actual conflict of interest,* legitimate decisions of counsel were rendered suspect because of the *potential* for conflicting loyalties to himself and his client. . . ." *Id.* at 137 (emphasis added). The case law today, however, requires Baker to demonstrate an actual conflict.

Moreover, *DeFalco* specifically relied on the "totality of the circumstances" with which the court was presented, including:

the facts that DeFalco's appeal emanated from *the same district court* in which his attorney was indicted, that three of his attorney's indictments were processed, prior to the striking of the plea bargain, before *the same district judge* who presided over DeFalco's trial, that *the same United States Attorney's office* prosecuted DeFalco and his lawyer, and that [counsel] entered into plea bargaining during the pendency of DeFalco's appeal with *the same United States Attorney's office* that constituted his adversary on appeal. . . .

*Id.* at 136–37 (emphasis added). Other circuits that have found an actual conflict under analogous circumstances have also emphasized the fact that the same office was prosecuting or investigating both the attorney and client. *See, e.g., Levy,* 25 F.3d at 156 (2d Cir.1994) (finding actual conflict for several reasons, including attorney's prosecution on unrelated charges by same office prosecuting defendant); *Thompkins v. Cohen,* 965 F.2d 330, 332 (7th Cir.1992) (presuming that an actual conflict may arise when defendant's lawyer

is under criminal investigation by the same prosecutor's office, but finding no adverse effect); *United States v. McLain,* 823 F.2d 1457, 1463–64 (11th Cir.1987) (finding actual conflict where attorney was under investigation by the same United States Attorney's office prosecuting the defendant and attorney had interest in prolonging the trial to delay his own indictment), *overruled on other grounds as recognized by United States v. Watson,* 866 F.2d 381, 385 n. 3 (11th Cir.1989). Here, however, Maloney was convicted in an unrelated matter in the Southern District of New York, while Baker was appealing from his conviction in the Central District of California.

 We thus hold that Baker's bare allegation of a conflict based solely on Maloney's cooperation and plea on unrelated charges in another federal district is, by itself, an insufficient basis on which to predicate an actual conflict for the purposes of establishing a violation of the right to conflict-free counsel.[3]

## B. Ineffective Assistance of Counsel

 Baker also contends that he was denied effective assistance of counsel because his attorney raised only a single unmeritorious claim on direct appeal and failed to raise several other viable issues. We have previously held that the two-pronged test announced in *Strickland* is the proper standard for evaluating the effectiveness of counsel on appeal. *United States v. Birtle,* 792 F.2d 846, 847 (9th Cir.1986). Therefore, Baker must show that (i) "counsel's advice fell below an objective standard of reasonableness" and that (ii) "there is a reasonable probability that, but for counsel's unprofessional errors, [defendant] would have prevailed on appeal." *Miller,* 882 F.2d at 1434 (citing *Strickland*). Moreover, we have also noted that:

> These two prongs partially overlap when evaluating the performance of appellate counsel. In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy ... Appellate counsel will therefore frequently remain above an objective standard of competence (prong one) and have caused her client no prejudice (prong two) for the same reason-because she declined to raise a weak issue. Such is the case here.

*Id.* Such is the case for Baker as well.

Baker contends that Maloney raised only the frivolous issue of the validity of

---

**3.** The only possible actual conflict was created when Maloney could not orally argue Baker's direct appeal because he had started serving his prison term. *See* footnote 1, *supra,* and accompanying text. Even assuming an actual conflict existed, however, there was no possible adverse effect from it for two independent reasons. First, as our disposition indicates, the appeal was wholly without merit. *See Baker,* 1992 WL 289548. In fact, Baker himself now characterizes the single issue raised in his direct appeal as "frivolous." As we point out in Part III.B, *infra,* the additional issues which Baker now contends should have been raised on his direct appeal are equally unmeritorious. Second, under the rules of the Ninth Circuit then in effect, any request by a party to waive oral argument must be independently approved by the panel assigned to hear the case. *See* Ninth Cir. R. 34–4, *Cir. Advisory Comm. Note (2)* (1992) (any request or stipulation that a case be submitted without oral argument "requires the approval of the panel"). Thus, the decision of the panel assigned to hear Baker's direct appeal approving Maloney's request that oral argument be waived was an independent, intervening cause which resulted in the case being submitted for decision without oral argument. *See Baker,* 1992 WL 289548, at *1 n. * (unanimously agreeing that "this case is appropriate for submission without oral argument") (citing Fed. R.App. P. 34(a); 9th Cir. R. 34–4).

the initial stop, when in fact effective appellate counsel would have challenged: (1) the admission of the cash found in Wheatley's purse; (2) the validity of the search warrant; (3) the sufficiency of the evidence for Baker's conviction; and (4) the admission of "profile" evidence concerning the shipment of narcotics via Federal Express. Baker cannot satisfy the *Strickland* standard for ineffective assistance because counsel's failure to raise any of these issues neither fell below an objective standard of reasonableness nor prejudiced the defendant. Counsel merely declined to raise several weak issues, none of which presents a reasonable probability that Baker would have prevailed on appeal.

■ The first two grounds for appeal would have been unsuccessful under basic Fourth Amendment doctrine because Baker did not have standing to challenge the search of Wheatley's purse and the admission of the money found in it. *See Rakas v. Illinois,* 439 U.S. 128, 134, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections." (citations omitted)). Neither, then, would he have had standing to challenge the validity of the search warrant on the basis that tainted evidence from the search of Wheatley's purse was included in the affidavit supporting the warrant. *See Dearinger v. Rhay,* 421 F.2d 1086, 1088 (9th Cir.1970) (holding that defendant "does not have standing to urge the illegality of [a companion's] arrest, and the 'poisonous fruit'

thereof, as a ground for challenging the warrant to search his home").

■ With respect to the third issue, there is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Wright,* 215 F.3d 1020, 1025 (9th Cir.2000). Baker contends that there was insufficient evidence to show his awareness of the contents of the package. Such an argument would not have had a reasonable probability of success in light of the evidence presented at trial, including the officers' observations of Baker's nervous behavior and suspicious conduct inside the Federal Express office; the large amount of cash found in Wheatley's purse; Wheatley's testimony that Baker had the box with him when he picked her up, provided the address in Mobile, Alabama, to which it was to be sent, and initially asked if he could use her sister's address as the return address; Baker's flight when confronted by the detectives outside the Federal Express office; the drugs found inside the shipped package; and Baker's subsequent travel to Mobile. A rational trier of fact clearly could infer from this evidence that Baker had knowledge of the contents of the package. Finally, regardless of whether the court erred in admitting "profile" evidence, such as testimony about the use of priority Federal Express shipping by drug dealers, any such error would have been harmless in light of the otherwise strong evidence of Baker's guilt.

Baker has not shown that he received ineffective assistance of counsel on direct appeal on the basis that counsel declined to raise the issues he now identifies.

## IV. CONCLUSION

We hold that Baker has failed to demonstrate through a factual showing on the record that counsel had an actual conflict of interest in representing him on direct appeal. We also hold that Baker has failed to show ineffective assistance of counsel on direct appeal. For these reasons, the judgment of the district court is

**AFFIRMED.**